oral argument not to exceed 15 minutes per side. Paul Giorgianni, for the appellant, you may proceed. I intend to reserve three minutes for rebuttal. Judge Murphy, may it please the court? I intend to reserve three minutes for rebuttal. Judge Murphy, may it please the court? Cars and trucks are a unique consumer product. This product is a dangerous instrumentality. Ownership of this consumer product is heavily regulated by state registration regimes, among other things. The operation of this consumer product is restricted by age. And it is an extraordinarily expensive consumer product. And they are all around us. By the millions, they are all around us all the time on our streets. And teens love them. I want to talk today about three main considerations that should fuel this court's analysis of the proximate cause issue, which is the main issue in this case. First is the nature of Kia Hyundai's wrongdoing. Second is the scale of that wrongdoing and the associated danger. And then finally, issues of public policy and why did you you would agree this is a novel theory of state law. If you said that in a brief. Well, your honor, I was I was responding to an argument. And if then I was trying to anticipate based on what was argued in the district court, what would be argued here? This is not a novel theory. This is squarely within mud rich federal steel and wire. This is act of a third party that is reasonably foreseeable. It's key. You would you would admit that there is quite a bit of precedent. On the other side, that suggests a thief's theft of a car and the negligent crashing of the car is a superseding cause. Of any negligence of those who gave the thief the opportunity to steal the car. The Ross Pendry line of cases. That's why I why didn't you sue in state court? I mean, we have we have tons of diversity cases that say we're not we're not the sphere for you to make novel expansions of state law in state court. We have 10 or so precedents that have suggested repeatedly the thief stealing a car is a rejection of the superseding cause. So why would we want to break the bonds of this precedent and establish liability for the first time when the state court itself has never done this? Your honor, it's not a controlling precedent here. The controlling precedent here is mud rich and steel, federal steel and wire. And it's a uniform rule that the act of a third party that is foreseeable is not a superseding cause. It is Kia and Hyundai who is asking for the expansion of Ohio law here. The Ross Pendry line of cases, every single case in that line, one thief, one vehicle. Kia and Hyundai is asking you to expand that rule and extend it to a situation involving millions of vehicles and innumerable thieves. And for the three reasons I just mentioned, that is very much so that. I'm trying to think why proximate cause should change depending on the. Would you say that an owner of a Kia who knows of this problem with the Kia should face liability? Would you distinguish Ross on that basis for the owner of a Kia? I would, because that's just one step further removed. So you would say the owner of a Kia whose car is stolen and face liability? No, I, the proximate, the chain of causation is one step further. I think that would be much more likely. Why is that one step further? Because, well, it's because they didn't because they weren't the ones who are negligent, I suppose, would be one theory. But that's less about proximate cause than negligence. I might be confused about kind of the central question here. We're under the OPLA, right? The Ohio statute, which I understand incorporates these kind of common law themes and understandings of proximate cause. But under the OPLA, as we're looking at, is our question now, what would a reasonable manufacturer foresee? Is that our proximate cause question? So is that different than, like, what would a reasonable car owner foresee or what would a reasonable auto dealership or something like that? Is our question here different than in Ross and Pendry? Yes, it is the reasonable manufacturer, distributor of the vehicles and what their actual knowledge is. So I can see that that would make a difference for duty, the duty element of a claim or whatever the statute is. Why would it why would it matter for proximate cause? That's what I'm struggling with. You want to say that it's an owner, individual owner versus a manufacturer. And yeah, OK, that might go to whether the manufacturer has a duty. But why would the rule that a thief is a superseding cause? Why would that change depending on the nature of the negligent party? Three sets of reasons, Your Honor. First, the nature of the conduct. The nature of the conduct here motivated the thefts by these juveniles. And that distinguishes this case. It just shows they were negligent. The nature of Kia's conduct. They negligently created this, but that's you have to prove breach duty negligence. It depends on the claim, of course, but for negligence claim, breach duty negligence or breach duty causation damages. So, yeah, I agree with you. It might distinguish. It might show negligence, but you also have to show causation. Sure. Well, proximate causation takes into account the totality of the circumstances and the superseding cause cannot be the Supreme Court of Ohio uses the word independent and independent cause. And here there wasn't that independence because the negligent design here and the failure to warn even after the manufacturer and distribution fueled these thefts by juveniles. So there is that extra element of causation there. Why wouldn't you say the same thing about the negligently keeping your keys in the car? That fueled the thief to take the car. It didn't. It's distinguishable because we can only assume from all the Ross Pendry line of cases because none of them mention anything about this issue. We can only assume that these are just crimes of opportunity that were just one offs. This is a situation where we've got millions of vehicles being put out there. And the totality of the circumstances of the nature of the vehicle, we know it was reasonably foreseeable that innumerable of these vehicles were going to be stolen by juveniles. And if you know that innumerable vehicles are going to be stolen by juveniles, then, you know, or it's reasonably foreseeable that there's a negligent operation. I would argue not only is it reasonably foreseeable that a 14 or 15 year old is going to be negligent, is going to negligently operate a vehicle. It is more likely than not. It is to be expected. And so this question really boils down to if you put in this modern age, you put all these identifiable vehicles out there, accessible to everyone as motor vehicles generally are. And you and they're identifiable, by the way, because 97% or more of the other vehicles out there do have the anti-theft technology. And so it's as if these Kia's and Hyundai's are out there with a flag on the antenna saying, steal me no key required. That and the scale distinguishes this case from the one offs, the one thief, one vehicle. Even if it's foreseeable that they're going to be stolen at a much higher rate because they don't have the technology that's in apparently 98% of other vehicles. What is the part that makes it foreseeable that it's going to be? Teenagers who drive recklessly, who are going to be the ones who do the stealing, because I mean, that's very specific, right? It's the thing that makes this case so much an easier case for the plaintiffs than the case where there is an adult. Right. It's presumably the Ross Pendry line of cases all involved adult thieves. There's nothing to suggest otherwise. And again, all these factors are intermixed. Right. The scale, Judge Davis, of the of the wrongdoing, the scale of the danger. We know that some number of juveniles are going to steal the vehicle as opposed to just the one off. If you're talking about focused on your and maybe you didn't mean it as broadly as I kind of interpreted it, because I understood you to say that it's really foreseeable that you're going to have teenagers who cannot drive stealing these vehicles in large numbers. Why? Why is that foreseeable? The sheer the sheer numbers and the millions of vehicles out there, the fact that these vehicles are identifiable as theft targets. We know that there are going to be a lot of innumerable thefts and thefts by juveniles and negligent operation as a result, as opposed to all the Ross Pendry cases, one car, one thief. Yes, but I thought you cited or at least reference reports in your complaint talking about just how many accidents, statistics about how many accidents come out of stolen cars generally, whether it's teenagers or not teenagers. It's true. And so I think plaintiffs would have an argument for reversal here, regardless of the age of the thieves. But the fact that there were juveniles here under 16 not legally able to operate a vehicle in Ohio just makes the plaintiff's case that much easier. Would you would you say that? I'm trying to think of how this how this works. Would you say that the manufacturer like your theory is everybody knows people get into these teams are getting into accidents. But if you just say more generally, everybody knows cars get into accidents. Does that mean that all manufacturers should be liable for all accidents or that these you've established that the manufacturers are the products and the cause of the accidents? No, Ross Pendry tells us otherwise. If you I mean, it's an argument I could make. I don't need to. Your theory seems to be the repetitive nature of it or the fact that it happens often. And my point is just that everybody knows the accidents. And so why aren't all accidents foreseeable, whether it's stolen by a thief or just a regular person driving the car? This is the hard thing about proximate cause. Right. It's a very amorphous concept. It is about it is about it's where the law steps in on a question of fact. But these vehicles are more likely to be stolen because statistically it shows that if you don't have things like three different pieces of technology that everyone else has that it's going to be stolen frequently. Right. Isn't that. Yes. It's like I said, it's like these cars have a flag on them. But that's why the whole general argument doesn't work. There's a there's a thing that specifically makes the theft of these vehicles foreseeable. And there's going to be a cohort amongst those thieves who are reckless and who might injure people. To be to be clear, both the magistrate judge who issued these decisions assumed and he and Hyundai, for purposes of this appeal, have tacitly conceded that the thefts were foreseeable. So this court doesn't need to worry about that issue. Right. For purposes of this appeal, these thefts were foreseeable. The question is the negligent operation foreseeable. And that's an easier question, because when you put out this many vehicles. Identifiable as lacking the standard reasonable theft prevention devices, you do know the juveniles are going to steal them. And it is to be presumed that juveniles will negligently operate the vehicle. By the way, a side note here, Hyundai and Kia frequently use the word reckless. There's no recklessness necessity here. Right. Mere negligent operation is enough. We're talking about just misconduct by a third party and negligence suffices for that. I see my. Go ahead. I say my time is up. Thank you, Your Honor. Jonathan Schneller for Hyundai Motor America for Hyundai America and Kia Motors America. I want to start by focusing the discussion a little bit on what we read the plaintiff's position be in this appeal. In their opening briefs, plaintiffs don't suggest that these accidents, the reckless or negligent driving that caused them were foreseeable to Hyundai or Kia. When they distributed these cars in 2018 and 2019, what they say is that specifically the advent of the Kia boys phenomenon years later in 2022 is foreseeable to Hyundai and Kia. What we explained in our opposition is that that's not how foreseeability works. Foreseeability means you could anticipate something before. What do you do with the response about recalls? So. So I assume that these acts have postdated those videos. That's right. That's right. So there's a number of points on that. One is the complaint doesn't state any claim based on post sale conduct. There's no fail to recall theory being asserted in the complaint. It wasn't briefed. This wasn't addressed in the district court briefing. And if it had been, there's a number of legal defects with it that we can address. But it really doesn't come up until the reply on appeal paid for the reply. We get one sentence that says that, among other things, the problem is that you didn't recall and remediate the problem. So we think this is a clear instance of forfeiture to start with. But on the merits, Ohio law doesn't impose any post sale duty to recall. The remedies under Ohio law for harms from a product are specified in the Ohio Product Liability Act. And that statute doesn't create any cause of action for failure to recall or any sort of post sale duty to retrofit a car. Do you have to warn even if you don't have to recall? Your Honor, there is a post sale duty to warn. But again, this wasn't asserted in the complaint. And if it had been, it would have it would have been a nonstarter here. For the same reason that we brief with respect to the fail to warn claim that was actually asserted, is there is no way that plaintiffs can allege in good faith that a warning after the sale would have made a difference in this case. Satisfy the warning causation element of failure to warn. These thefts were widely publicized. Hyundai and Kia did in fact contact vehicle owners about the thefts. And so there's just no good faith argument. It wasn't done in the complaint. It wasn't briefed below. But if it had been, it would have failed on warning causation. So I think your response is then. If they had known of the problem and continued to manufacture. So your point is they didn't know it in 2018, 2019, when these two specific cars. Would your view be different? Would you think that proximate cause would be satisfied if they if they had known about it and continued to manufacture cars? So imagine the hypo is just different and it's a 2023 car. Right. Right. So the answer is actually no. If you look at Ross and Pendry, these are not decisions about the subjective state of knowledge of a particular defendant about the risk that someone will drive the vehicle recklessly. The hunts, the hunt versus marksman case that we cite in our brief, it tells you that foreseeability for proximate cause is essentially a policy determination. And what Ross and Pendry are doing is they're stating a policy for Ohio where we have to draw the line somewhere in terms of how far out we're going to go with liability for a car theft. And we're going to draw it before. I don't know that arguing it as a pure policy rule helps you here. Right. And in part in Ross and Pendry, they're talking about the policy vis-a-vis like a negligent entrustment. And do we want to make like an individual owner of a car? Essentially, it's insurer. Right. But it's very different than policy that we might want to think about for a manufacturer deciding to make a car that lacks a key feature that 90 percent of other cars on the road have. So the policy might not be the best angle. So two points on that, Your Honor. First is that the policy that's being drawn is we need to cut off somewhere and we're going to do it before the second crime as a matter of fairness. And that fairness rationale doesn't change. Well, fairness can be different to an individual owner instead of a manufacturer. Well, so on that point, Your Honor, I think it's important to consider here that any car can be stolen, not just Hyundais and Kias. There have been similar lawsuits filed against other manufacturers. And if if there were a different policy for manufacturers, you'd have a new genre of liability. Basically, every time a stolen car gets into an accident where everybody goes to court and decides whether the manufacturer's theft protections were adequate. That just can't be squared with the reasoning of Ross and Pendry, which say this is we have to draw the line somewhere. And a thief's choice to drive recklessly is independent of the theft. And so we're going to drive before the thief drives recklessly. I would also do the question I'm really curious about is I could see as I asked your friend on the other side, I could see the duty element changing. What is the duty between an owner and a manufacturer? Do we think that the test for causation should change depending on the nature of the defendant? Well, so, Your Honor, what the Fox decision noted, this is the Northern District of Ohio decision that the district court here relied on, is that there's no language in any of these Ohio precedents suggesting that the outcome should change based on status. Set aside these precedents, can you think of anything? I'm just curious as a matter of general approximate cause law. So as a matter of approximate cause law, it's the totality of the circumstances in reasonable positions. So in theory, different factual contexts, you could have different outcomes. But here, the application of the reasonable person standard in this case was informed by the policy considerations I'm talking about in terms of where to cut off the line. I mean, on those considerations, if I could come back to Judge Blumenkatz's question, I would just note that there's almost less of a need for liability for manufacturers than there would be for individual car owners on these facts. Individual car owners might need a nudge in theory to take their keys out of the car to prevent an accident. Auto manufacturers have every incentive to create cars with adequate theft protection systems. And Hyundai and Kia marketed these cars with no issue for a decade, no issue whatsoever with thefts, until a literally unprecedented social media phenomenon, a crime wave on social media, some that had never happened before, caused during the pandemic, caused teens to go out and start stealing these cars. The issue here is not a gap in incentives that needs to be plugged by the tort system. It's a set of unforeseeable intervening criminal acts, which includes the social media solicitation to commit these thefts. Can I ask a hypothetical question? Like, if we take it out of cars for a second, right? Like, let's say we have a gun manufacturer, right? And I know guns are kind of an intense situation. But say we have a gun maker and a claim that the gun is defective because it lacks safety locks. Right. And therefore, an unauthorized user can get it and negligently harm someone. OK, how does that unauthorized user necessarily break proximate causation under Ohio law? So I don't know if Ohio has ever dealt with that exact situation. I know that in other states there are cases saying that that breaks the chain. I might advise you to Cincinnati versus Beretta 2002 case of the Ohio Supreme Court, who that said that actually it was a city that sued and said that the city's injuries, including medical services from accidents and things like that, were foreseeable and survived a motion to dismiss. Right. So I'm familiar with that case. And in that case, there was there were allegations that the gun manufacturer was intentionally funneling its weapons into the criminal market. The court treated it as a question of malfeasance rather than nonfeasance. But wasn't it still a products case? And doesn't it still deal with proximate cause? It was the products case. But I think the way Dobbs on torts describes that case, it's a products case about intentionally selling your guns to criminals. And when you do that, when you know, I think you use the term creating illegal secondary through affirmative misconduct. It stands to reason that you're causing the crimes that you create by affirmatively trying to foster the growth of a secondary market to increase your sales. This case is very different. What we have here is a case of nonfeasance, a failure to prevent a crime, not affirmatively going out and causing it. And the proximate cause analysis is different as a result. It's the same mode of negligence that's at issue in all these other Ohio cases, which is just a failure to prevent a car theft. And so, you know, I think Beretta would not be the right precedent from Ohio to fall for that proximate cause analysis. So, you know, I think coming back to the policy issue, when I said that what these cases are about is that the court is going to cut off the line at a certain place and not make this a subjective analysis of what a particular defendant knew or didn't know. The line from Ross is, you know, the conclusion it gets to is that the defendant was not in law bound to foresee the accident. Not that they couldn't foresee, not that they didn't foresee it, but that they were not in law bound to foresee the accident. You know, anyone who's watched cops enough times understands that a car accident is a potential risk of a vehicle theft. We don't conduct that kind of subjective analysis in applying this rule. What you have instead is decades of uniform precedent applying this as a categorical rule and holding that, including for car dealerships, I should add, not just for individual cars. It's so strange to say foreseeable. I mean, if you had to ask me in those cases, it was foreseeable that the thief who stole the car would get into an accident. It's really, it's a facade for what they're really doing. But what it comes back to is the line from Hunt v. Marksman, which is that foreseeability in this context is a policy determination. Do you think it has anything to do with whatever that other proximate cause doctrine is, the harm within the risk? So if you're negligent in keeping the car secure, there may be a risk of theft. But the risk of that negligently driving the car later is not within the kind of scope of the risk. I think you could absolutely. I think that I think you could formulate it that way. I don't know that Ohio courts apply the harm within the risk case. I'm sure there are decisions here and there that do. I don't know how prominent it is in Ohio law. But I think it could absolutely be formulated that way, is that what makes it negligent to sell a car that doesn't fully protect against theft is the possibility that it will be stolen. But what these cases reflect is that negligence in failing to prevent theft, that reckless driving is not one of the harms that's being protected against when liability is imposed. So just as a practical matter, I mean, you've cited the case law. I suspect I know what you're going to say here. But I mean, this Kia challenge, these videos, they were viral. Everybody in the country saw them. So the manufacturer who has ostensibly made this easier for teenagers to get involved in really has no possible liability here for anything relating to it. Is that essentially what your argument is? Yes, Your Honor, it is. And again, I would just reemphasize there was no issue at all with these vehicles for a decade. This was not foreseeable. Kia did not foresee it. Hyundai did not foresee it. And nobody else foresaw it. It was not a secret that these cars didn't have engines. There was no issue with their theft until during the pandemic, a really unprecedented social media crime rate began. And so the theft and reckless driving in and of themselves break the chain of causation. But it is the case here that there is that additional criminal intervening act, which is teenagers on social media soliciting crimes on a broad scale, which had never happened before that I'm aware of. And so, yes, it is our position that that entire chain of causation makes the end result here unforeseeable for purposes of proximate cause. Can I ask you just a pragmatic question? I know you have cases, at least in California, presenting similar theories. Or maybe they don't. Some of them do, maybe. I'm curious why you have never requested any type of certification to the Ohio Supreme Court. In California, any of these cases. So right now we have an interlocutory appeal to the Ninth Circuit from the California case. But we're all just guessing. I mean, it really depends on what the Ohio Supreme Court would say. If there's enough of these cases, is it worthwhile for certain cases to be certified? So I think the answer to that question is that the cases in California are under many different states laws and Ohio is one of them. There's at least eight to 10 other states. So it would be a request for 10 different certifications. And I think our client has instead in that litigation made the choice to pursue an interlocutory appeal to the Ninth Circuit on all states laws is just a more easily administrable way to move the law forward on these cases. Thank you. Thank you. If please the court. The Ross Pendry cases are not, as my friend says, categorical. At least two Ohio appellate courts have distinguished Pendry expressly. One was the Fletcher case that I cited in my brief. Another one is the Inskeep case, 5th District from 2023, which is interesting because it involved a child thief. It was a child at the Columbus Zoo who took a golf cart that had been left unattended. And I'd argue that those two cases distinguishing Ross Pendry really informed the court's decision in this case. I want to get to the address your friend's arguments about your pleadings here, right, that it really focuses on the Kia challenge, which doesn't come till much later. I mean, I know you I think you you cited in your complaints cities that may be slightly before the Kia challenge. We're seeing a lot of a lot of thefts of these cars. But but essentially, these are post manufacturing down the line challenges. Your Honor, I don't think the plaintiff should be punished for including more in the complaint than was necessary. I think what is what your friend here was saying was missing was, you know, knowledge and foreseeability kind of at the times that these cars were made or sold. Well, my argument here today is, is that it was foreseeable at the time of manufacture. But even if I mean, my case is easier than that because we also have a failure to warn claim, which includes post manufacturing conduct. And so even if the court is going to ignore the state of knowledge at the time of the manufacturer, after the Kia challenge became known and these cars were being stolen as frequently as they were, there was a failure to warn the owners. And a 30 dollar steering wheel locking device would have prevented thefts. And so they could have warned car owners to put those devices on the steering wheels. And if they had. Those vehicles wouldn't have been stolen or stolen by juveniles. More to the point, the cat's got to one of my two points about the policy issue here. When you've got manufacturers putting millions of cars out there, it's a different policy consideration than a single owner who we don't make owners insurers. The other policy point is, is that in the one car, one thief cases, the owners or the Bailey's, whoever had possession of the car, they stood only to lose by having the car stolen. Here, Kia and Hyundai made a profit motivated decision to not install two hundred dollars worth of safety devices and expose all of us to the risk of these vehicles. That alone should give this court pause and should distinguish this case from all the one vehicle, one thief cases. Kia and Hyundai is asking for an extraordinary ruling to extend Ross and Henry to say it's not foreseeable that a 14 or 15 year old would negligibly operate a vehicle in the modern age. That's to be expected. And by the way, these vehicles were not 10 year old vehicles. They were much closer in time. We all know what Internet virality is like. It was to be expected that the word would get out that these vehicles are identifiable as theft risks. We ask the reverse. Thank you. Thank you.